INTERNATIONAL PRODUCTS CORP. (WILLIAM H. MASSON, INC.)
v. UNITED STATES

No. 6253.—Invoice dated Beverley, Yks., England, December·6, 1937.
   Certified December 10, 1937.
   Entered at Baltimore, Md., January 17, 1938.
   Entry No. 3456.

   (Decided on remand [Reap. Dec. 6129] February 1, 1946)

 *Tompkins & Tompkins (J. Stuart Tompkins of counsel)* for the plaintiff.
 *Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

EKWALL, Judge: This case is before me on remand, having been the subject of protracted litigation. The merchandise consists of

785 bags Powdered Myrabolam Extract 60 per centum shake. It was entered at the invoice price of £19.0.0 per ton of 1,016 kilos, less certain nondutiable charges. Appraisement was made at £21.9.0 per ton, less 1 per centum discount, packing included, which represented the foreign value as defined in section 402 (c) of the Tariff Act of 1930. Both sides agreed that there was no export value.

The case originally came before me for decision and I found a value of £20.6.3 per ton of 1,016 kilos f. o. b. Hull, packing included, less a discount of 3 per centum (Reap. Dec. 5897). A rehearing from that finding was granted and upon rehearing the decision was modified to the extent of allowing only 2 per centum for discount (Reap. Dec. 5998). From that decision the Government filed an application for review to a division of the court which held that there was no foreign value for the merchandise and the case was remanded to me with instructions to restore the same to the calendar in order that the importer might have an opportunity to establish United States value, if possible, or the cost of production, as those values are defined in section 402, subsections (e) and (f), respectively.

The only question before me for decision, therefore, is whether the evidence shows a United States value for the merchandise and if so, what such value is, or if no United States value exists, what the cost of production of this merchandise is shown to be under the terms of the statute.

At the trial on remand the Government introduced and there was admitted in evidence as exhibit 6 a report of Mr. Paul Hermes, customs agent, dated October 11, 1945. Both counsel agreed that in their opinion the report disclosed that no statutory United States value existed for this merchandise on the date of exportation. Said report states that there was but one dealer in this country in such or similar merchandise at and prior to the date of exportation of the merchandise in question, and that dealer had on hand at that time only 28 bags of this imported powdered Myrabolam Extract available for sale, which amount was left from a previous importation. Even were the evidence sufficient to show that this amount was offered for sale during the period here involved, such proof would not constitute offers in the usual wholesale quantity of this merchandise, inasmuch as the court found in Reap. Dec. 5897 that the usual wholesale quantity was 100 bags or 5 tons. It further appears that the method of doing business by the exporter and importer was such that sales were made in the United States of merchandise not available here, but to be shipped over, subsequent to the receipt of an order. Therefore, there was no prototype merchandise in this country at the time of the exportation of the instant merchandise, with the exception of the 28 bags noted above.

From an examination of the entire report, I conclude and so hold

that no United States value for this or similar merchandise existed at the time of the exportation of this powdered Myrabolam Extract. See *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274; *United States* v. *Collin & Gissel*, 29 C. C. P. A. (Customs) 96, C. A. D. 176; and *Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48.

The report contains no information as to the cost of production. The evidence on that point is contained in the affidavit of Mr. G. W. Odey (exhibit 3). That evidence shows the cost of production as follows:

| | | | |
|---|---|---|---|
| I. (a) Cost of materials | | | £10. 12. 11 |
| (b) Cost of fabrication, manipulation, etc | | | 2. 12. 0 |
| II. Usual General Expenses | | | 1. 9. 4 |
| III. (a) Cost of containers or coverings | | | 5. 2 |
| (b) Other expenses incident to placing the extract in condition packed ready for delivery to United States Ports: | | | |
| United Kingdom Carriage Beverley to Hull | 5. 5 | | |
| Ocean Freight | 1. 13. 0 | | |
| Marine Insurance | 9 | | |
| 5% Agency Commission on mean price of £19.6.8 | 19. 4 | | |
| | | 2. 18. 6 | |
| IV. Profit | | 1. 8. 9 | |
| V. Total cost of production | | | £19. 6. 8 |

Government counsel at the hearing on remand made the following statement and concession:

Now, in examining Exhibit Number 3, received in evidence in this court on December 18, 1942, and after a consultation with Mr. Prevost this morning, we have found that the statutory cost of production, as stated in this exhibit, showing a total cost of production of £ 19.6.8, includes a calculation in that total of the following items:

| | |
|---|---|
| United Kingdom Carriage Beverley to Hull | 5.5 |
| Ocean Freight | 1.13.0 |
| Marine insurance | 9 pence |

It is the opinion of Mr. Prevost [Assistant Appraiser at the port of entry] as well as my own that those three items are not properly inclusive in the cost of production, and are properly deductible; the addition of each of those items should be deducted from the £ 19.6.8 in order to find the statutory cost of production in the event this court should find there is no United States value.

The three items above set forth cannot be held to be "expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States." I therefore find that they should be deducted from the amount set forth in the affidavit (exhibit 3) as the total cost of production, viz, £ 19.6.8, leaving the proper cost of production as shown by the evidence to be £ 17.7.6 per ton of 1,016 kilos.

I therefore make the following findings: The goods consist of powdered Myrabolam Extract imported at the port of Baltimore, Md. There was in existence at the time of exportation of the merchandise no foreign, export, or United States value as those values are defined in section 402 of the Tariff Act of 1930. The proper basis for appraisement is, therefore, cost of production as defined in said section 402, which I find to be £ 17.7.6 per ton of 1,016 kilos.

Judgment will be rendered accordingly.